T.C. Summary Opinion 2003-16

UNITED STATES TAX COURT

DANVIS S. AND SHERYL S. SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9210-00S.          Filed February 28, 2003.

Danvis S. Smith, pro se.

<u>Sara J. Barkley</u>, for respondent.

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the years in issue.

Respondent determined deficiencies in petitioners' Federal income taxes of $8,993 and $5,053, and accuracy-related penalties of $1,799 and $1,011, respectively, for the taxable years 1995 and 1996.

The issues for decision are: (1) Whether petitioners are entitled to charitable contribution deductions in 1995 and 1996; (2) whether petitioners are entitled to certain miscellaneous itemized deductions in 1995 and 1996 and business expense deductions in 1995; and (3) whether petitioners are liable for accuracy-related penalties under section 6662(a) for 1995 and 1996.[1]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Highlands Ranch, Colorado, on the date the petition was filed in this case.

Charitable Contribution Deductions

During the years in issue, petitioner husband (petitioner) was the director of Alpha Ministries. Petitioners provided nearly all of the funds used by Alpha Ministries, and nearly all of these funds were in turn used to pay for expenses of

---

[1]Petitioners concede respondent's determination that they received $123 in unreported interest income in 1995. Respondent determined that petitioners were entitled to unclaimed deductions in 1995 of $463 for investment interest expense and $62 for business office expense.

petitioners, primarily in the form of a "housing allowance".[2]
Petitioner, upon receiving paychecks from unrelated employment,
would sign the back of the paychecks over to Alpha Ministries
prior to depositing them into a checking account bearing the
designation "Alpha Ministries".  The account into which the funds
were deposited was owned and controlled by petitioners, and
petitioners alone had authority to use the funds therein.

Petitioners filed joint Federal income tax returns for the
years in issue.  On these returns, petitioners claimed deductions
of $27,150 in 1995 and $30,500 in 1996 for charitable
contributions purportedly made to Alpha Ministries.  In the
statutory notice of deficiency, respondent disallowed these
deductions in full.

---

[2]Petitioners, relying on uncorroborated summary documents
entered into evidence, argue that Alpha Ministries had the
following income and expenses for each of the years in issue:

|  | 1995 | 1996 |
|---|---|---|
| Income |  |  |
| Cash donations by petitioners | $31,560 | $25,740 |
| Cash donations by other individuals | 290 | 100 |
| Interest on deposits | 12 | 18 |
|  | 31,862 | 25,858 |
| Disbursements |  |  |
| Petitioner's housing allowance | $22,000 | $24,775 |
| Petitioner's health care allowance | 700 | -0- |
| Petitioner's auto/travel allowance | 700 | 200 |
| Petitioner's books and materials | 94 | -0- |
| Loan to petitioner | 8,135 | -0- |
| Supplies, postage, fees, and copies | 34 | -0- |
|  | 31,663 | 24,975 |

Although we do not accept these figures as actual amounts of
income and expenses of Alpha Ministries, we accept them as an
admission by petitioners that any funds received by, or
designated for use by, Alpha Ministries were used almost
exclusively for the personal benefit of petitioners.

As a general rule, personal, living, and family expenses are nondeductible.  Sec. 262(a).  Subject to limitations not relevant here, section 170(a) allows a deduction for charitable contributions made during the taxable year to certain types of organizations.  For a contribution to be deductible, it must be made to an organization "no part of the net earnings of which inures to the benefit of any private shareholder or individual".  Sec. 170(c)(2)(C).

The facts in the case before us are substantially similar to the facts in a prior case before this Court, <u>Miedaner v. Commissioner</u>, 81 T.C. 272 (1983).  In <u>Miedaner</u>, the taxpayers established and subsequently operated an entity known as the Church of Physical Theology.  They had established a separate checking account for the church, but used funds from this account for a variety of personal expenses, primarily for "living allowances" for each of the taxpayers.  In sustaining the Commissioner's disallowance of deductions claimed by the taxpayers for amounts purportedly contributed to the church, this Court stated:

> the church was essentially inseparable from the personal
> interests of Terrel and Penelope, and we agree with
> respondent's observation that petitioners literally bathed
> themselves in personal benefits.  Their "contributions"
> funded their living allowances * * * .  The church account
> was simply a magic wand whereby personal expenses were
> converted into tax deductions.  Where contributions go to

pay personal expenses, they are neither charitable nor deductible.  * * *

Id. at 281.

Assuming arguendo that petitioners made any contributions in this case, petitioners, by their own admission, used any contributed funds funneled through Alpha Ministries almost exclusively for their own housing and for other expenses benefitting only petitioners.  Thus, in accordance with section 170(c)(2)(C) and Miedaner v. Commissioner, supra, petitioners are not entitled to the claimed charitable contribution deductions.  See also Davis v. Commissioner, 81 T.C. 806, 817 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985) (no charitable contributions were made where taxpayer retained control of the funds and derived personal benefits therefrom).

Itemized and Business Deductions

During 1995 and 1996, petitioner's primary employment was as a faculty member of Apollo Group, Inc. of Phoenix, Arizona. Petitioner's duties included class preparation, keeping records of grades and attendance, communicating with the school administration, conducting tests, and grading papers and tests. In connection with this employment, petitioners claimed miscellaneous itemized deductions with respect to the following unreimbursed employee business expenses, in each respective year:

|                                              | 1995    | 1996    |
|----------------------------------------------|---------|---------|
| Vehicle expense                              | $2,949  | $2,520  |
| Parking fees, tolls, and transportation      | 24      | 32      |
| Other expenses                               |         |         |
|    "Business auto loan interest" | 698   |         |
|    "Office rent"              | 4,800   |         |
|    "Postage and express"      | 64      |         |
|    "Office supplies"          | 80      |         |
|    "Grading services"         | 7,513   |         |
|    Unspecified                |         | 3,647   |
| Less reimbursements by employer              | (653)   | (168)   |
| Total (adjusted for rounding errors)         | 15,474  | 6,031   |

Respondent disallowed the deductions with respect to expenses of $13,011 in 1995 and $3,166 in 1996.[3]

For taxable year 1995, petitioner filed a Schedule C, Profit or Loss From Business, for a sole proprietorship known as "Smith Table Pads". The schedule listed the principal business of the proprietorship as "distributor of custom fitted table pads and teaching". On the schedule, petitioners claimed deductions for, among others, the following: interest expense of $2,163; rent expense of $5,800; travel expense of $2,642; and meal and entertainment expense of $680. Respondent disallowed each of these deductions in full, except with respect to interest expense of $731.

During both of the years in issue, petitioners resided in residences owned by petitioners in their own names.

In 1995, petitioner organized a corporation under Colorado law known as Smith Corporation. The articles of incorporation

---

[3]Respondent's additional adjustment to the total of the 1995 miscellaneous itemized deductions, which was based on a change in petitioners' adjusted gross income, is computational and will be resolved by the Court's holding on the issues in this case.

were stamped received by the Colorado Secretary of State on December 13, 1995. The corporation never received an employer identification number from the Internal Revenue Service and never filed Federal income or employment tax returns. Petitioner, the sole shareholder, intended to use this corporation for a number of separate activities: First, the corporation was meant to establish a vending machine route. Second, petitioner hoped the corporation would take over his table pad business. Third, petitioner thought that he could "pay" the corporation to provide grading services needed for his Apollo Group employment, services which he in turn would personally provide. Finally, petitioner thought that he could "pay" the corporation rent for use of his residence in grading papers and other activities, while petitioner and his wife personally owned the residence. With respect to the latter two activities, petitioner claimed deductions on the 1995 return for alleged payments to the corporation, which had been incorporated on or about December 13 of that year. Petitioner never transferred any funds to the corporation or to an account designated for corporate use.

A taxpayer may deduct the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including the trade or business of being an employee. Sec. 162(a); Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). A taxpayer, however, generally must keep records

sufficient to establish the amounts of the items reported on his Federal income tax return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. In the event that a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We cannot estimate a deductible expense, however, unless the taxpayer presents evidence sufficient to provide some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Furthermore, section 274(d) supersedes the Cohan doctrine and prohibits estimating certain expenses. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. 412 F.2d 201 (2d Cir. 1969). That section provides that, unless the taxpayer complies with certain strict substantiation rules, no deduction is allowable (1) for traveling expenses, (2) for entertainment expenses, (3) for expenses for gifts, or (4) with respect to listed property. Listed property includes passenger automobiles and other property used as a means of transportation. Sec. 280F(d)(4). To meet the strict substantiation requirements, the taxpayer must substantiate the amount, time, place, and business

purpose of the expenses.  Sec. 274(d); sec. 1.274-5T, Temporary Income Tax Regs., 50 Fed. Reg. 46006 (Nov. 6, 1985).

Petitioners have failed to substantiate any of the Schedule C deductions or the employee business expense deductions disallowed by respondent.[4]  Petitioners have failed to provide evidence that the expenses were incurred, such as receipts, and they have failed to sufficiently explain the underlying business purposes.  For example, petitioners claim to have traveled to Hawaii in connection with the business of the sole proprietorship.  However, overlooking whether petitioners in fact traveled to Hawaii primarily to sell table pads, they provided no receipts for the travel, and their daily planner indicates that their primary business-related activity was making phone calls-- calls which presumably could have been made from Colorado. Petitioners assert that a flood destroyed many of the records which would have provided substantiation.  Even if this were the case, however, petitioners have not adequately attempted to reconstruct any destroyed records, by such means as obtaining copies of bank or credit card records.  Finally, petitioners have not provided the Court with any basis upon which to estimate expenses (with respect to those for which estimates may be made).

---

[4]Sec. 7491(a) does not shift the burden of proof to respondent here because petitioners have failed to produce any credible evidence with respect to the disallowed deductions.

We sustain respondent's disallowance of each of the deductions at issue.[5]

## Accuracy-Related Penalties

Respondent determined that petitioners are liable for accuracy-related penalties under section 6662(a) for both years in issue with respect to the underpayments resulting from the total amounts of the deficiencies. Respondent has the burden of production with respect to the penalties but the burden of proof remains on petitioners. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438 (2001).

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, one of which is negligence or disregard of rules or regulations. Sec. 6662(b)(1). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was

---

[5]The rent expense claimed by petitioners as both employee business expense and Schedule C business expense was connected to petitioner's use of his own residence. Although petitioners do not directly address the "home office" provisions of sec. 280A we note that petitioners have not shown that any portion of their residence was "exclusively used on a regular basis" for business purposes. Sec. 280A(c)(1).

reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id.

Petitioners claimed deductions for payments which were never made, and they failed to properly substantiate various other deductions claimed on their returns. Furthermore, petitioners used Alpha Ministries and Smith Corporation--entities which were essentially alter egos of petitioner--to eliminate nearly all Federal tax liability on their wage and salary income in each of the years in issue. The use of these entities in this manner is not evidence of a reasonable attempt to comply with Federal tax law and does not reflect reasonable cause and good faith for petitioners' actions.

We find that petitioners were negligent and hold that they are liable for the accuracy-related penalties determined by respondent.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.